WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Esteban Tiznado-Reyna, | No. CV-14-02428-TUC-JGZ |
| Petitioner, | **ORDER** |
| v. | |
| Eric Himpton Holder, Jr., | |
| Respondent. | |

Pending before the Court is a Motion for Summary Judgment filed by Respondent Attorney General Loretta E. Lynch on September 17, 2015. (Doc. 50.) Petitioner Esteban Tiznado-Reyna filed a response to the Motion on October 19, 2015 and Petitioner timely replied. (Docs. 56, 62.) Respondent seeks summary judgment on Plaintiff's claim of United States citizenship under 8 U.S.C. § 1252(b)(5). For the reasons stated herein, the Court will deny the Motion.

## FACTUAL / PROCEDURAL BACKGROUND[1]

Petitioner Esteban Tiznado-Reyna was born in Sasabe, Sonora, Mexico in April of 1974. (RSOF 1; PSOF 1.) Petitioner claims to be a United States citizen through his father, Jesus Diego Tiznado, whom he states was born in Topawa, Arizona on the Tohono O'odham reservation on November 12, 1922. (Doc. 50, p. 2; Doc. 56, p. 1;

---

[1] Respondents' Statement of Facts (Doc. 51) is abbreviated herein as "RSOF." Petitioner's Response to Respondent's Statement of Facts (Doc. 57, pgs. 1-9) is abbreviated herein as "PSOF" and Petitioner's Controverting Statement of Facts (Doc. 57, pgs. 9-14) is abbreviated herein as "PCSOF." Respondent's Response to Petitioner's Controverting Statement of Facts (Doc. 60) is abbreviated herein as "RRSOF."

PCSOF 1.)  The Tohono O'odham Nation is a Native American tribe comprised of approximately 28,000 members with a reservation of 4,460 square miles located west of Tucson, Arizona and spanning the U.S.-Mexico border for approximately 75 miles.  *See* Tohono O'odham Nation, *About* (2014), http://www.tonation-nsn.gov/about_ton.aspx; *see also* Press Release, Tohono O'odham Nation Opposes New Immigration Law (May 20, 2010), *available* at www.tonation-nsn.gov.  Historically, the Tohono O'odham tribe inhabited an area that encompassed northern Mexico but was eventually divided by the border between the United States and Mexico.  *See* Tohono O'odham Nation, *History & Culture* (2014), http://www.tonation-nsn.gov/history_culture.aspx.

Children born at home on the Tohono O'odham reservation in the 1920s were not issued birth certificates.  (RSOF 22; PSOF 22.)  On October 26, 1979, the State of Arizona issued Jesus Tiznado a delayed birth certificate that stated that he was born in Topawa, Arizona on November 12, 1922.  (RSOF 6; PSOF 6.)  Jesus Tiznado's delayed birth certificate was based on four pieces of documentary evidence: (1) his certificate of baptism, which states his place of birth was Topawa, Arizona; (2) his school records, which indicate that he began attending school in the United States on October 29, 1928; (3) the birth certificate of his daughter, Adelaida Tiznado Reyna, which indicates that she was born in Topawa, Arizona; and (4) an affidavit from his friend, Francisco Moreno, dated January 11, 1977.  (RSOF 7; PSOF 7.)

Petitioner moved to the United States with his family in 1979 when he was five years old, and remained in the United States until he was removed to Mexico on March 17, 2000 by order of an immigration judge ("IJ").  (RSOF 34; PSOF 34.)  Petitioner has been removed from the United States to Mexico three additional times since then.  (RSOF 33; PSOF 33.)

Petitioner has been charged with illegal re-entry on two occasions.  On May 21, 2002, he was convicted on a guilty plea of illegal reentry after deportation.  (RSOF 35; PSOF 35.)  On June 21, 2006, Petitioner was indicted for criminal re-entry; he was acquitted of that charge on April 24, 2008 after a jury trial.  (RSOF 38; PSOF 38.)

On December 18, 2011, Petitioner reentered the United States and was placed in removal proceedings for a fifth time. (RSOF 41; PSOF 41.) The Department of Homeland Security reinstated his prior order of removal with the issuance of a Notice to Appear on April 13, 2012. (*Id*.) On February 8, 2013, an IJ found Petitioner removable under 8 U.S.C. § 1182(a)(6)(A)(i) and denied Petitioner's motion to terminate proceedings based upon his claim of U.S. citizenship. (RSOF 42; PSOF, 42.) On appeal, the Board of Immigration Appeals adopted and affirmed the IJ's decision. (RSOF 43; PSOF 43.) Petitioner filed a timely appeal in the United States Court of Appeals for the Ninth Circuit. (RSOF 44; PSOF 44.) On June 11, 2014, the Ninth Circuit Court of Appeals issued an Order finding that a genuine issue of material fact exists as to Petitioner's citizenship and transferred the proceedings to the United States District Court for the District of Arizona for *de novo* review of Tiznado-Reyna's citizenship claim pursuant to 8 U.S.C. § 1252(b)(5)(B). (*Id*.)

### APPLICABLE STANDARDS

**A. Summary Judgment Standard of Review**

In deciding a motion for summary judgment, the Court views the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *See Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-25. Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party merely

1  needs to point out to the Court the absence of evidence supporting its opponent's claim; it
2  does not need to disprove its opponent's claim.  *Id.* at 325*; see also* Fed. R. Civ. P. 56(c).
3  If a moving party has made this showing, the non-moving party may not rest upon the
4  mere allegations or denials of the adverse party's pleading, but must set forth specific
5  facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248-49; *see*
6  *also* Fed. R. Civ. P. 56(c); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th
7  Cir. 1995). To meet this burden, the non-moving party must only show "sufficient
8  evidence supporting the claimed factual dispute… to require a jury or judge to resolve the
9  parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz. v. Cities Serv.*
10 *Co.*, 391 U.S. 253, 288-89 (1968).

**B.    Burden of Proof for Citizenship Claims under 8 U.S.C. § 1252(b)(5).**

The government "bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence." *Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015).  When, however, the government offers evidence of foreign birth, a rebuttable presumption of alienage arises, shifting the burden to the alleged citizen to prove citizenship.  *Id*. Upon production by a petitioner of "substantial credible evidence" of the citizenship claim, this presumption bursts and the burden shifts back to the government to "prov[e] the respondent removable by clear and convincing evidence." *Id*.

Accordingly, in order to prevail on its summary judgment motion, the government must demonstrate that there is no genuine issue of material fact as to Petitioner's citizenship.  Conversely, to survive summary judgment, Petitioner must demonstrate that a reasonable jury could conclude based on substantial, credible evidence that Petitioner acquired U.S. citizenship through his father's birth in Arizona.

## ANALYSIS

Respondent moves for summary judgment on the grounds that there is no genuine issue of material fact as to Petitioner's nationality claim under 8 U.S.C. § 1252(b)(5)(B); Respondent contends that Petitioner cannot meet his burden of proving that his father,

- 4 -

Jesus Tiznado, was born in the United States. Petitioner argues that Respondents are not entitled to summary judgment because (1) the Ninth Circuit's Order transferring this matter to this Court precludes the granting of summary judgment; and (2) a genuine issue of material fact exists as to Petitioner's citizenship claim.

The Court concludes that the Ninth Circuit's decision to transfer this matter is not determinative of the summary judgment motion, which this Court must review *de novo*. The Court also concludes that a genuine issue of material fact exists as to Petitioner's citizenship claim because a reasonable jury could find by a preponderance of the evidence that Petitioner acquired citizenship through his father.

**A.     The Ninth Circuit's Order is Not Determinative of the Pending Motion**

In its Order transferring these proceedings to this Court for *de novo* review of Petitioner's citizenship claim, the Ninth Circuit Court of Appeals found that "a genuine issue of material fact exists as to petitioner's citizenship." (Doc. 1.) Petitioner argues that the Ninth Circuit's determination "is the law of the case," and thus, Respondent's summary judgment must be denied as a matter of law. (Doc. 56, p. 3.)

The Ninth Circuit's finding at the time of transfer does not preclude a post-discovery grant of summary judgment. Once a reviewing court finds that a genuine issue of material fact exists, "the reviewing court must transfer the proceeding to a district court for a *de novo* determination." *Ayala-Villanueva v. Holder*, 572 F.3d 736, 738 (9th Cir. 2009) (citing 8 U.S.C. § 1252(b)(5)(B)). *De novo* review gives the parties the opportunity to conduct full discovery and permits the district court to decide a motion for summary judgment *de novo* at the conclusion of discovery. *See Chau v. Dep't of Homeland Sec.*, 424 F. Supp. 2d 1159, 1163, 1167 (D. Ariz. 2006) (granting a motion for summary judgment in a nationality transfer case upon *de novo* review); *see also Caballero v. Holder*, 2014 WL 1763203, *6 (D. Ariz. 2014) (same).

**B.     A Material Issue of Fact Exists as to Petitioner's Citizenship Claim**

"Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." *Miller v. Albright*, 523 U.S. 420, 423-34 (1998).

1  Congress set forth categories of persons deemed to be United States citizens at birth in 8
2  U.S.C. § 1401.  Section (g) of that statute provides for United States citizenship for "any
3  person born outside the geographical limits of the United States . . . of parents one of
4  whom is an alien, and the other a citizen of the United States who, prior to the birth of
5  such person, was physically present in the United States . . . for a period or periods
6  totaling not less than five years, at least two of which were after attaining the age of
7  fourteen years . . . " 8 U.S.C. § 1401 (g).  Petitioner was born in Mexico on April 13,
8  1974.  (RSOF 1; PSOF 1.)  The parties do not dispute that the statutory requirements of
9  legitimation and physical presence are satisfied.  (Doc. 50, p. 10; Doc. 56, p. 1.)  The
10 only issue in dispute in this case is whether Petitioner can demonstrate substantial,
11 credible evidence that his father, Jesus Tiznado, was born in the United States.

12 A birth certificate filed within one year of the date of birth is primary evidence of
13 nationality for a person born in the United States.  22 C.F.R. § 51.42(a); *Lopez v. U.S.
14 Dep't of State, ex. rel. Clinton*, 2013 WL 121804, *7 (D. Or. 2013).[2]  Alternatively, if a
15 birth certificate is insufficient to qualify as primary evidence of nationality, "[s]econdary
16 evidence includes but is not limited to hospital birth certificates, baptismal certificates,
17 medical and school records, certificates of circumcision, other documentary evidence
18 created shortly after birth but generally not more than 5 years after birth, and/or affidavits
19 of persons having personal knowledge of the facts of the birth."  22 C.F.R. § 51.42(b);
20 *Lopez* at *7.  There is no list of specific documents that must be used in determining
21 nationality.  *Lopez* at *7.  Accordingly, federal courts have concluded that the
22 Department of State "intends its regulations be considered in the context of the specific
23 case, that each piece of evidence be evaluated for its authenticity and reliability, and that
24 the determination whether a petitioner has met the preponderance burden be made on the

---

[2] A claim to United States citizenship may be initiated in two ways: a declaration of citizenship may be sought under 8 U.S.C. § 1503(a) or a claim may be brought under 8 U.S.C. § 1252(b)(5). *Seal v. Holder*, WL 2881256, at *1 (W.D. Wash. May 31, 2012) *report and recommendation adopted,* 2012 WL 2881250 (W.D. Wash. July 13, 2012). Because both types of claims are treated as a claim for declaratory judgment under 28 U.S.C. § 2201, case law regarding evidence that may be considered in a claim under 8 U.S.C. § 1503(a) also applies to Petitioner's claim under 8 U.S.C. § 1252(b)(5).

- 6 -

1 totality of all the evidence submitted." *Lopez* at \*8; *see also Acosta v. United States*, 2015 WL 1965318, \*7 (W.D. Wash. 2015). While Petitioner bears the burden of establishing acquired U.S. citizenship through his father's birth in the United States by substantial, credible evidence, the standard is not meant to be an impossible burden to meet. To impose upon those who claim U.S. citizenship "a standard of proof which in the circumstances cannot be met by genuine claimants is to run a serious risk of committing the grave injustice of denying the precious privilege of that citizenship to those to whom it belongs by right of birth." *Soo Hoo Yin Deep v. Dulles*, 116 F. Supp. 25, 27 (D. Mass. 1953).

The Court concludes that Petitioner has presented sufficient documentary, testimonial and circumstantial evidence from which a jury could find that his father was born in the United States. Petitioner offers five documents indicating that Jesus Tiznado was born in Topawa, Arizona: (1) a delayed birth certificate issued by the State of Arizona on October 26, 1979; [3] (2) a baptismal register showing that Jesus Tiznado was baptized at San Solano Mission in Topawa, Arizona on October 10, 1924; (3) two baptismal certificates issued on October 3, 1974 and April 8, 1976; (4) a death certificate issued by the Arizona Department of Health Services for Jesus Tiznado in 2000; and (5) a U.S. Citizen Identification Card issued by legacy INS to Jesus Tiznado in 1980.[4] (Doc. 56, pgs. 3-7.)

//

---

[3] Petitioner points out that the delayed birth certificate is "prima facie evidence of the facts therein stated" under A.R.S. § 12-2264. (PSOF, p. 2.) While Respondent argues that the Arizona Registrar is not owed special deference, the Ninth Circuit has held that official birth certificates "are prima facie, but not conclusive, evidence of the facts stated therein." *Mah Toi v. Brownell*, 219 F.2d 642, 643 (9th Cir. 1955).

[4] Respondent argues that the issuance of the U.S. Citizen Identification Card should be given little weight because the information on the card is based solely on Jesus Tiznado's sworn testimony. (Doc. 59, p. 5.) Additionally, Respondent argues that if the Court were to afford a presumption of administrative competence and consistency, it should look to the fact that various government agencies have determined over the years that Jesus Tiznado was not a U.S. citizen, and thus, neither is Petitioner. (Doc. 59, p. 6.) The Court takes these considerations into account only in determining the evidentiary weight to be given to the card.

- 7 -

Petitioner has also provided testimonial evidence in support of his claim that Jesus Tiznado was born in the United States. At Petitioner's 2008 illegal re-entry trial, Petitioner's mother, three of his sisters, and a distant relative testified that it was the common understanding of the family that Petitioner's father was born in Topawa, Arizona and that he never said he was born anywhere else. (PCSOF 20-24; RRSOF 20-24.) Jaime Yslas, a USCIS adjudications officer and citizenship expert, testified that the affidavit of Francisco Moreno (submitted by Jesus Tiznado in support of his delayed birth certificate application) "tend[ed] to indicate" that Petitioner's father was born in the United States. (PCSOF 20; RRSOF 20.) Finally, Bernard Siquieros, an expert on Tohono O'odham history and culture, testified that baptismal records were the primary method for recording births on the Tohono O'odham Nation in the 1920s. (PCSOF 26; RRSOF 26.)

Petitioner points to additional circumstantial evidence that supports his citizenship claim. Searches conducted by the Director of Vital Records in Sonora, Mexico in 1988 and 2009, and by the U.S. Consulate in Sonora, Mexico in 1988 found no record of Jesus Tiznado's birth in Mexico. (PCSOF 6, 7; RRSOF 6, 7.) In contrast, Petitioner's mother, Julia Reina, was born in Mexico in 1935 and her birth is recorded in the official civil registry for the state of Sonora. (PCSOF 8; RRSOF 8.) In addition, Jesus Tiznado's older and younger siblings were born in Arizona before and after Jesus Tiznado's alleged date of birth: Maria was born in Ajo, Arizona in 1915; Miguel was born in Ajo, Arizona in 1916,[5] and Dolores was born in Goodyear, Arizona in 1927. (PCSOF, 16; RRSOF 16.) Petitioner offers evidence that Jesus Tiznado's parents were in the United States at the time he was born: Jesus Tiznado's second cousin, Humberto Carillo Tiznado, successfully applied for acquired citizenship through Miguel Tiznado (Jesus Tiznado's older brother). (PCSOF 12; RRSOF 12.) As with Jesus Tiznado, the Arizona State Registrar issued a delayed birth certificate to Miguel Tiznado in 1970, which states that he was born in Ajo, Arizona on October 3, 1915. (PCSOF 11; RRSOF 11.) USCIS did

---

[5] PCSOF 13 states that Miguel Tiznado was born on October 3, 1915, and PCSOF 16 states that he was born in 1916. This inconsistency is not explained.

- 8 -

not dispute the fact that Miguel's delayed birth certificate established that he was a citizen of the United States by birth in Ajo, Arizona. (PCSOF 13; RRSOF 13.)  On June 6, 2011, the USCIS Administrative Appeals Office found that the record contained documents indicating that Miguel Tiznado was in the United States from his birth in 1915 through approximately 1928, which tends to support Petitioner's contention that Jesus Tiznado's parents were in the United States when he was born in 1922. (PCSOF 15; RRSOF 15.) Finally, a federal jury in 2008 unanimously found Petitioner not guilty of illegal re-entry after deportation.  (RSOF 38; PSOF 38.)  While the acquittal does not mean that Petitioner could prove by substantial and credible evidence that he is a U.S. citizen through his father, it gives some support to his claim that a genuine issue of material fact exists.  In sum, the Court concludes that a jury, considering all of the documentary, testimonial and circumstantial evidence, could conclude that Petitioner's father was born in the United States.

Respondent presents four arguments in the pending Motion, none of which demonstrate that Respondent is entitled to judgment as a matter of law regarding Petitioner's citizenship.  First, Respondent argues that Petitioner cannot meet his burden of proof regarding his father's citizenship because Jesus Tiznado's delayed birth certificate is not based on reliable, contemporaneously-issued documents.   However, the weight to be given Jesus Tiznado's delayed birth certificate, and its underlying evidence, should be evaluated in light of the circumstances.  Respondent concedes that birth certificates were not issued on the Tohono O'odham reservation in 1922 and that baptismal records at the San Solano Mission in Topawa, where Jesus Tiznado was baptized on October 10, 1924, did not record the place of birth for any individual baptized at the mission at that time.  Under the Government's reasoning, it would be impossible for Petitioner to demonstrate his father's U.S. birth through documentary evidence created contemporaneous to his father's birth.  Furthermore, the government's challenge goes to the weigh and reliability of the documents underlying the Arizona Registrar's decision to issue the delayed birth certificate; it does not support a finding of no genuine issue of material fact. *See United States v. Evans*, 728 F.3d 953, 962 (9th Cir.

2013) (holding that "the fact that the [delayed] birth certificate was an official document… provided a sufficient basis upon which a juror *could* conclude that the birth certificate was 'substantively genuine.' And to the extent the Government's evidence suggests otherwise, the issue boils down to the credibility of the parties' conflicting evidence, which is a question for the jury to decide.") While courts have found that a delayed birth certificate is entitled to less evidentiary weight than a contemporaneously filed birth certificate, this does not mean that a contemporaneously filed record of birth is required to prove U.S citizenship birth.  *Lopez*, at \*7; *Merrell v. Gardner*, 397 F.2d 65, 66 (5th Cir. 1968) (finding that a delayed birth certificate should be given some weight "because the supporting documentary evidence must have been found satisfactory by the state officials who issued it.").[6]  In fact, courts have found that a petitioner can rebut the presumption of alienage through a delayed birth certificate combined with other evidence, even when weighed against a contemporaneously filed *foreign* birth certificate. *See Lopez*, at \*9 (holding that delayed Washington birth certificate and witness affidavit were sufficient to overcome the presumption of alienage created by a Mexican birth certificate); *Cobos*, at \*7 (holding that plaintiff rebutted presumption of alienage from a contemporaneously filed Mexican birth certificate through a delayed Texas birth certificate and testimonial evidence).

Second, Respondent argues that the one piece evidence created contemporaneously to Jesus Tiznado's birth, his original baptismal register, does not identify his place of birth, and thus, is not evidence of his birth in Topawa, Arizona. However, Petitioner presents the recorded statement of David Paz, a priest at the San Solano Mission, to an INS agent in 1984, who stated that "the place of birth is not reflected in the [baptismal] record, if the place of birth is in the town of baptismal or within close vicinity."  (PCSOF 3; RSOF 3.)  Thus, a reasonable jury could infer, based on Jesus Tiznado's original baptismal certificate, that he was, in fact, born in Topawa,

---

[6] At least one federal court has held that a delayed birth certificate should be given no evidentiary weight when the supplementary documents underlying a delayed birth certificate are not included in the plaintiff's citizenship claim; however, that is not the case here.  *See Patel v. Rice*, 403 F. Supp. 2d 560, 564 (N.D. Tex. 2005).

- 10 -

Arizona.

Third, Respondent argues that Jesus Tiznado's 1974 and 1976 baptismal certificates, which state that he was born in Topawa, Arizona, are flawed because Katherine Rhinehart, Chancellor of the Diocese of Tucson, testified that the birth place information was likely provided by the person requesting the documents. Katherine Rhinehart's exact testimony, however, is that the place of birth listed on a baptismal certificate could have been provided by the person requesting the certificate, but that "that would only be a guess." (Doc. 51-1, pg. 41.) Therefore, a reasonable jury could find that the 1974 and 1976 baptismal certificates are reliable and probative.

Finally, Respondent claims that Petitioner's sister, Esther Maldonado, testified that she did not claim U.S. citizenship through their father because she did not believe she acquired citizenship through him.  That argument misrepresents Esther's testimony. Esther testified that she did not claim citizenship through her father because "he didn't want us to get papers through him … because my father would have some things.  How can I explain this?  Like thinking if I bring my wife over, there could be a divorce." (Doc. 51-1, pg. 96.)  Esther further testified that "my mother had the opportunity when amnesty came in, and so we did this." (*Id.*)  Esther's testimony in no way suggests that at any time she understood or evaluated the requirements for establishing acquired citizenship through her father.

Viewing the evidence in the light most favorable to the Petitioner, the Court finds that there are genuine issues of material fact in this case.  A factfinder could reasonably find by a preponderance of the evidence that Jesus Tiznado was born in Topawa, Arizona and thus, that Petitioner, Esteban Tiznado-Reyna, acquired U.S. citizenship through his father.

//
//
//
//
//

## CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT Respondent's Motion for Summary Judgment filed on September 17, 2015 (Doc. 50) is DENIED.

Pursuant to the Court's July 1, 2015 Scheduling Order, the parties shall file a joint proposed pretrial order within 30 days of the date this Order is filed. A form of joint proposed pretrial order is attached hereto.

Dated this 8th day of June, 2016.

_Jennifer Zipps_
Jennifer G. Zipps
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Esteban Tiznado-Reyna,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Eric Himpton Holder, Jr.,<br><br>　　　　　Respondent. | No. CV-14-02428-TUC-JGZ<br><br>**ORDER** |

The following are pretrial proceedings in this cause pursuant to Rule 16.2 of this Court, and IT IS ORDERED:

I.     IDENTIFICATION OF PARTIES AND COUNSEL

II.     NATURE OF ACTION

This is an action for: (Short concise statement of the case, including the nature of the action and the relief sought.)

III.     STATEMENT OF JURISDICTION

Statement of jurisdiction: (state the claims and cite the statutes which give this Court jurisdiction over each claim.)

IV.     STIPULATIONS AND UNCONTESTED FACTS

State the issues of law and fact to which the parties stipulate and which do not need to be proven at trial. Each issue must be stated separately and specifically.

V.     CONTESTED ISSUES OF LAW/FACT

State the ultimate issues of fact and law which must be decided at trial. State only

1  the issues of fact and law necessary and material for a verdict in this case. Each issue
2  must be stated separately and specifically.
3  VI.    LIST OF EXHIBITS
4         Each party shall list the exhibits it intends to offer at trial.
5  VII.    LIST OF WITNESSES
6         Each party shall list the witnesses it intends to call at trial.
7  VIII.    JURY TRIAL or BENCH TRIAL
8         The parties shall state whether the trial is a jury or bench trial.
9         A.    For a Jury Trial: At the Pretrial Conference, the Court will direct the parties
10  to file proposed voir dire, objections to exhibits, deposition testimony, stipulated jury
11  instructions, counsel's additional proposed jury instructions, motions in limine, and trial
12  memoranda 20 days prior to trial. Any opposition shall be filed five days thereafter.
13         B.    For a Bench Trial: At the Pretrial Conference, the Court will direct the
14  parties to file trial briefs, objections to exhibits, motions in limine, and proposed findings
15  of fact and conclusions of law 20 days prior to trial. Any opposition shall be filed five
16  days thereafter.
17  IX.    PROBABLE LENGTH OF TRIAL
18         Each party shall identify the estimated length of time it will take to present its
19  case.
20  X.    ADDITIONAL INFORMATION THAT MAY BE HELPFUL TO THE COURT
21  XI.    CERTIFICATION
22         The undersigned counsel for each of the parties in this action do hereby approve
23  and certify the form and content of this proposed Joint Pretrial Order.
24
25  _____              _____
26  Attorney for Plaintiff                                 Attorney for Defendant
27
28