# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Esteban Tiznado-Reyna,<br><br>    Petitioner,<br><br>v.<br><br>Jefferson B. Sessions III,<br><br>    Respondent. | No. CV 14-02428-TUC-JGZ<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This matter was transferred to the Court from the Ninth Circuit Court of Appeals for de novo review of Petitioner Esteban Tiznado-Reyna's citizenship claim pursuant to 8 U.S.C. § 1252(b)(5)(B). The question before the Court is whether Petitioner has presented sufficient evidence of derivative citizenship through his father, Jesus Diego Tiznado. Specifically, the Court must determine whether Petitioner has offered substantial, credible evidence establishing that Jesus Tiznado was born in Topawa, Arizona, making him a U.S. citizen by birth. For the reasons explained below, the Court finds that Petitioner has not met his burden of producing substantial, credible evidence.

In a removal proceeding, the government "bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence." *Chau v. I.N.S.,* 247 F.3d 1026, 1029 n. 5 (9th Cir. 2001). *Mondaca-Vega v. Lynch,* 808 F.3d 413, 419 (9th Cir. 2015), sets forth the burden-shifting framework applicable to Petitioner's derivative citizenship claim. (*See* Doc. 81.) Under the *Mondaca-Vega v. Lynch,* where the government offers evidence of foreign birth, a

1    rebuttable presumption of alienage arises, shifting the burden to Petitioner to prove
2    citizenship. *Id*. If Petitioner presents substantial, credible evidence of his citizenship
3    claim, the presumption of alienage "bursts" and the burden shifts back to the government
4    to prove by clear and convincing evidence that Petitioner is removable. *Id*. This burden is
5    one of production, not persuasion, and the Court views the evidence in the light most
6    favorable to Petitioner. *Id*.

7    The parties waived jury determination and elected to have this issue decided by
8    the Court. (Doc. 67.)  The parties jointly submitted evidence and, on July 10, 2017, the
9    Government presented one witness.  (Docs. 85, 86, 87, 92.) On August 10, 2017, the
10   parties submitted Proposed Findings of Fact and Conclusions of Law. (Docs 89-91.)[1]

11   To support his claim that his father, Jesus Tiznado, was born in the United States,
12   Petitioner offers the following documentary evidence: (1) the San Solano Mission
13   baptismal register entry of Jesus Tiznado's baptism at the Mission in Topawa, Arizona,
14   on Oct. 10, 1924 (Resp. Ex. 51); (2) baptismal certificates issued in 1974 and 1976
15   stating Topawa was Jesus's place of birth (Pet. Ex. 2, 28); (3) a delayed birth certificate
16   issued by the State of Arizona on October 10, 1979 (Pet. Ex. 1); (4) a U.S. Citizen
17   Identification Card issued by legacy INS to Jesus Tiznado in 1980 (Pet. Ex. 29); and (5)
18   Jesus Tiznado's death certificate, issued by the Arizona Department of Health Services,
19   in 2000. (Pet. Ex. 11.) Petitioner also offers witness testimony given at depositions and at
20   Petitioner's 2008 trial for illegal re-entry that Jesus Tiznado had always claimed to be
21   born in Topawa, Arizona. (Pet. Exs. 8-10, 20-27.) Finally, Petitioner presents evidence
22   that many of his family members lived in the United States and have been able to
23   establish U.S. citizenship. (Pet. Exs. 12-18).

24   In response to Plaintiff's evidence, Respondent offers: (1) the San Solano
25   baptismal register (Resp. Ex. 51); (2) testimony addressing Catholic canonical practice

---

[1] Petitioner's Stipulated Record Exhibits (Doc. 87) is abbreviated herein as "Pet. Ex." Petitioner's Proposed Findings of Fact and Conclusions of Law (Doc. 90) is abbreviated herein as "PPFAC." Respondent's Stipulated Record Exhibits (Doc. 87) is abbreviated herein as "Resp. Ex." Respondent's Amended Proposed Findings of Fact and Conclusions of Law (Doc. 91) is abbreviated herein as "RPFAC."

with regard to baptismal records (Resp. Ex. 4; Doc. 92); (3) three birth certificates for two of Jesus Tiznado's daughters, two of which identify Jesus Tiznado as a Mexican native (Resp. Exs. 53, 57; Pet. Ex. 27); and (4) documents pertaining to Petitioner's denied application for U.S. citizenship in 2009. (Resp. Exs. 55-56.)

The Court concludes that although some of Petitioner's documents appear to show that Jesus Tiznado was born in the United States, the records do not withstand scrutiny. The church's baptismal registry does not reflect that Jesus Tiznado was born in the United States and therefore calls into question the subsequent documents, which were issued in reliance on the baptismal record. This, in addition to the conflicting nature of the remainder of the evidence, leads to the Court's conclusion that Petitioner has not rebutted the presumption of alienage with substantial credible evidence.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Fed. R. Civ. P. 52(a), upon reviewing all matters of record, hearing the testimony at trial, weighing the credibility of the witnesses, and examining all exhibits, the Court makes the following findings of fact and conclusions of law. To the extent these findings of fact are also deemed to be conclusions of law, or conclusions of law include findings of fact, they are hereby designated as such.

**I.      Findings of Fact**

**A.  Petitioner's Parents**

1. Petitioner Esteban Tiznado-Reyna was born on April 13, 1974 in Sonora, Mexico to his mother, Julia Reina, and his father, Jesus Diego Tiznado. (PPFAC at 1; RPFAC at 2.)

2. Petitioner's mother, Julia Reina, was born in Mexico in 1935 and her birth is recorded in the official civil registry for the state of Sonora. (Pet. Ex. 7.)

3. Petitioner's parents married on March 31, 1979, satisfying the legitimacy requirement for derived citizenship through his parents. (Resp. Ex. 55 at 6.)

4. Petitioner's father, Jesus Tiznado, was born on or around November 12, 1922. (PPFAC at 1; Pet. Ex. 2 at 1; Resp. Ex. 51.)

5. There is no record of Jesus Tiznado's birth in Mexico, based on searches conducted by the Director of Vital Records in Sonora, Mexico in 1988 and 2002, and by the U.S. Consulate in Sonora in 1988. (Pet. Exs. 4-6.)

6. There is no birth certification showing Jesus Tiznado's birth in the United States. (Pet. Ex. 3; PPSOF 2-3).

7. Jesus Tiznado was baptized at the San Solano Mission in Topawa, Arizona on October 10, 1924, approximately two years after his birth. (Resp. Ex. 51.)

8. Topawa is located approximately 18 miles north of the Mexican border, on the lands of the Tohono O'odham nation. (Resp. Ex. 60.)

9. The traditional Tohono O'odham lands extend across much of southern Arizona, both north and south of the U.S.-Mexico border. (Dep. Bernard Siquieros, Pet. Ex. 26, at 21-22, 24-26.)

10. At the time of Jesus Tiznado's birth in the 1920s, people on Tohono O'odham lands moved freely across the U.S.-Mexico border for family and trade purposes. (*Id*. at 19, 16.)

11. It was common for members of the O'odham tribe to be born in the U.S. or the Mexico in the 1920s. (*Id*. at 21-22.)

12. Not all infants born on O'odham lands were tribal members. (*Id*. at 34.)

13. Children born on the Tohono O'odham reservation in the 1920s were frequently born at home because they were too far from a hospital. Children born at home typically were not issued birth certificates. (*Id*. at 36).

14. The majority of Tohono O'odham membership in the early 1900s was Catholic (*id*. at 39), and Catholic baptismal records were a common method Tohono O'odham members used to record the fact of a non-hospital birth on their land. (*Id*. at 36-38.)

**B. Roman Catholic Baptismal Record-Keeping Practices at the San Solano Mission**

15. The San Solano Mission falls within the jurisdiction of the Roman Catholic Church's Diocese of Tucson, which stretches across 43,000 square miles of southern Arizona. (Test. Katherine Rhinehart, Doc. 92, at 8, 28.)

16. The San Solano Mission's parish is one of the largest in the Diocese of Tucson, and it serves a geographic area approximately the size of Connecticut, stretching south to the Mexican border and west, nearly to Ajo, Arizona. (*Id*.)

17. Often there were no records except for baptism records among the Catholic parishes in the 1920s. (Resp. Ex. 54 at 23.)

18. The Roman Catholic Church maintains its sacramental records subject to Catholic canon law. (Test. Rhinehart, Doc. 92, at 8.)

19. Catholic baptismal registers are not public records and may only be accessed by certain officials in the Church. (*Id*. at 8-9.)

20. The San Solano Mission has maintained written baptismal registers since 1912. (*Id*.)

21. Although different Catholic parishes used different books to record their baptismal records, and therefore sometimes included extra information not required by canon law, Catholic canonical law in effect in 1924 required a baptismal register to include the name and date of birth of the person being baptized, the date and location of the baptism, the name of priest performing the baptism, and the witnesses to the baptism. (Dep. Katherine Rhinehart, Resp. Doc. 54, at 9-11; Test. Rhinehart, Doc 92, at 15, 26; Resp. Ex. 59.)

22. Catholic canonical law in effect in 1924 did not call for the place of birth to be recorded in the baptismal registers. (*Id*. at 15-16.)

23. Prior to 1917, Catholic canonical law did not require baptismal registers to include the place of baptism. (*Id*. at 26.)

24. Catholic canonical law changed in 1983 to require the inclusion of the place

1   of birth in the baptismal registers; this entry must be verified by a certified document or
2   by affidavit from a parent or a witness to the birth. (*Id.*)

3   25.   Baptismal registers are typically maintained at the church or mission where
4   a baptism took place. (Test. Rhinehart, Doc. 92, at 12.)

5   26.   The San Solano Mission kept a single baptismal register to record the
6   baptisms occurring in churches associated with the Mission. (Test. Rhinehart, Doc. 92, at
7   11-12.)

8   27.   The specific church where a baptism was conducted was identified in the
9   baptismal register by notating the location of the church above the date of baptism. (Test.
10  Rhinehart, Doc. 92, at 11-12.)

11  28.   If a member of the Church wants to locate his or her baptismal record,
12  Catholic archivists inspect the baptismal registers located at the church closest to the
13  residence of the baptismal recipient at the time of baptism. (Test. Rhinehart, Doc. 92, at
14  12-13.)

15  29.   Therefore, although Catholic canon law did not require the place of
16  residence to be included in the register, the family's residence at the time of baptism was
17  sometimes recorded by parishes as a means of later directing people to their baptismal
18  records. (Test. Rhinehart, Doc. 92, at 12-14.)

19  30.   The baptismal register, in which Jesus Tiznado's baptismal information is
20  entered, includes the residences of those being baptized. This information is provided in a
21  column titled "Residentia" in the register. (Test. Rhinehart, Doc. 92, at 12.)

22  **C. Jesus Tiznado's Baptismal Register Entry**

23  31.   Jesus Tiznado is listed on Page 16, Entry 8 of the San Solano Mission's
24  Baptismal Register for 1924-1935.[2] (Test. Rhinehart, Doc. 92, at 9; Resp. Ex. 51.)

25  32.   Consistent with canon law existing at that time, Jesus Tiznado's baptismal
26  register designated spaces in which to record the baptismal recipient's name, date of

---

[2] Jesus Tiznado's name is occasionally spelled "Tesnado" in the records presented to the Court, including in the baptismal register. (*See, e.g.,* Pet. Ex. 2.)

1  birth, date and time of baptism, and parent's names. (*Id*. at 11-12; Resp. Ex. 51.)

2  33. Consistent with canon law, Jesus Tiznado's baptismal register does not
3  include a space in which to record his place of birth. (Dep. Rhinehart, Resp. Ex. 54, at
4  10.)

5  34. The baptismal register entry for Jesus Tiznado shows San Francisquito,
6  Sonora as Jesus Tiznado's residence. (Resp. Ex. 51).

7  35. Contrary to canon law, Jesus Tiznado's baptismal register does not include
8  a designated space to record the place of baptism. (Test. Rhinehart, Ex. 54, at 26.)

9  36. However, in Jesus Tiznado's baptismal register entry, a handwritten entry
10 above the date of baptism reads "Topawa." (Dep. Rhinehart, Ex. 54, at 26; Test.
11 Rhinehart, Ex. 92, at 12.)

12 37. Petitioner relies on a statement made by David Paz, a former Brother at the
13 San Solano Mission, to an Immigration and Naturalization Services (INS) agent in 1984
14 that often "the place of birth is not reflected in the record, if the place of birth is in the
15 town of baptismal or within close vicinity."[3] (Pet. Ex. 3.)

### D. Jesus Tiznado's Certificates of Baptism

17 38. Baptismal certificate forms are not standardized across the different
18 parishes in the Diocese of Tucson. (Test. Rhinehart, Doc. 92, at 19.)

19 39. To remain consistent with canon law, a church official completing a
20 baptismal certificate should "only take what is in the register and put that into the
21 certificate." (Test. Rhinehart, Doc. 92, at 19.)

22 40. Jesus Tiznado obtained two Certificates of Baptism, one in 1974 and one in
23 1976, both citing the San Solano Baptismal Register as their source of information (Pet.
24 Exs. 2, 28.)

25 41. Both of Jesus Tiznado's baptismal certificates state that he was born in
26 Topawa, Arizona on Nov. 12, 1922. (*Id*.)

---

[3] The parties have stipulated to the submission of evidence, such as Moreno's affidavit, that may be inadmissible hearsay unless certain exceptions are met. Accordingly, the Court will not consider the admissibility of such evidence, only what weight such evidence warrants.

**E. Jesus Tiznado's Delayed Birth Certificate**

42. On October 26, 1979, Jesus Tiznado obtained a delayed birth certificate from the state of Arizona by submitting (1) his 1928 school records from Gilbert, Arizona; (2) a baptismal certificate listing Topawa, Arizona as his place of birth; (3) a 1958 birth certificate for one of his children, Adelaida Tiznado Reyna, stating her father was from Topawa, Arizona; and (4) a 1977 affidavit from his friend, Francisco Moreno. (PPFAC at 2; RPFAC at 3.)

43. The 1928 school records do not indicate where Jesus Tiznado was born. The records do, however, list his nationality as Mexican. (Pet. Ex. 19.)

44. The baptismal certificate listing Topawa, Arizona, as Jesus Tiznado's place of birth is not supported by the San Solano baptismal register because the register does not show Jesus Tiznado's place of birth.

45. Adelaida Tiznado Reyna's birth certificate is not in evidence. (*See* PPFAC at 2; Pet. Ex. List, Doc. 87.)

46. In a 2010 letter, the United States Citizen and Immigration Services (USCIS) denied Petitioner's request to reconsider the denial of his application for certificate of citizenship, noting that: (1) a copy of the birth certificate of Adelaida Tiznado, Petitioner's sister, obtained directly from the Registro Civil in Hermosillo, states that Adelaida's father, Jesus Tiznado, was born in Rancho Veracruz, Mexico; (2) in a sworn statement before a USCIS officer on January 6, 1975, Adelaida stated that her father was a native and citizen of Mexico; and (3) on July 28, 1982, in a second sworn statement before a USCIS officer, Adelaida stated that her father was a native and citizen of Mexico, who was using the documents of a brother. (Resp. Ex. 56.)

47. Francisco Moreno's affidavit is not in the record (*see* Doc. 87); Petitioner relies on the April 22, 2008 testimony of Citizenship and Immigration Services adjudication officer Jaime Yslas, who summarized Moreno's affidavit during Petitioner's 2008 trial for illegal re-entry. (Pet. Ex. 20.)

48. Officer Yslas testified that Moreno's affidavit "tended to indicate" that Jesus Tiznado was born in the United States and was three years old when he first met Moreno. (*Id*.)

**F. Other Evidence Relating to Jesus Tiznado's Place of Birth**

49. In 2008 a jury acquitted Petitioner Esteban Reyna-Tiznado of the charge of illegal re-entry after deportation in violation of 8 U.S.C. 1326(a); some of the evidence presented at that trial is included in the stipulated record. (Pet. Ex. 8-10.)

50. At the 2008 trial, Jesus Tiznado's wife, Julia Reyna, two of his daughters, Esther Lidia and Arcadia, and his distant relative, Jose Ruiz Caballero-Alcaraz, testified that Jesus Tiznado had claimed to be born in Topawa. (Pet. Exs. 21 at 22-23; 22 at 29; 27 at 6; 24 at 35.)

51. Jesus Tiznado is listed as a Mexican native of Mexican nationality on birth certificates for his daughters Ester Lidia Maldonado, born in 1969 (Pet Ex. 27 at 40; Resp. Ex. 53), and Arcadia Espinoza, born in 1970. (Resp. Ex. 57.)

52. Arcadia's 1970 birth certificate identifies her father as Diego Tiznado, of Mexican nationality, native of "this place," or El Plomo, Sonora, where the certificate was issued. (*Id*.)

53. Likewise, Esther Lidia's 1969 birth certificate lists Diego Tiznado, of Mexican nationality, native of El Plomo, Sonora. (Resp. Ex. 53.)

54. A July 1979 re-issuance of Esther Lidia's birth certificate lists her father as Jesus Diego Tiznado Gonzales, of Mexican nationality, native of "Topagwa as in the certificate." (Pet. Ex. 27 at 33-34, Resp. Ex. 53.)

55. Julia Reyna, Jesus Tiznado's wife and Esther Lidia and Arcadia's mother, signed all three of the birth certificates on record for Esther Lidia and Arcadia.

56. Jesus Tiznado and other members of his family, including his older and younger siblings and his paternal grandfather, resided in Arizona periodically throughout the 1920s. (Pet. Exs. 18, 19, 12-17.)

1    57.    Petitioner applications for U.S. citizenship were denied in May 1989 and January 2009, and in 2010, USCIS denied a motion to reconsider the 2009 denial. (RPFAC at 8; Pet. Ex. 8-9; Resp. Ex. 55-56; Pet. Exs. 8-9).

**II. Conclusions of Law**

58.    In a de novo review, the Court "freely consider[s] the matter anew." *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).

59.    *Mondaca-Vega* directs the Court to assess whether Petitioner's evidence is not only substantial, but also credible.  808 F.3d 413, 419 (9th Cir. 2015) "Substantial evidence is 'more than a mere scintilla,' ... but less than a preponderance." *Rose v. Sessions*, 679 F. App'x 557, 559 (9th Cir. 2017) (*quoting Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996)).[4] "Usually, a credibility determination is based on an assessment of the witness' demeanor and consistency in answering questions." *Murphy v. I.N.S.*, 54 F.3d 605, 611 (9th Cir. 1995). Additionally, "[c]redibility evaluations involve more than a witness' demeanor and comprehends an overall evaluation of the testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence in the case." § 2586 Findings of Fact—Credibility of Witnesses, 9C Fed. Prac. & Proc. Civ. § 2586 (3d ed.).  In other words, when determining credibility, it is appropriate to consider how one given piece of evidence fits within the larger context of available evidence.

60.    The government's uncontested evidence of Esteban Tiznado-Reyna's foreign birth raised a rebuttable presumption of alienage, shifting the burden of production to Petitioner to establish a valid citizenship claim. To meet this burden, Petitioner must supply substantial, credible evidence showing that his father, Jesus Diego Tiznado, was born in Topawa, Arizona, rather than in Mexico.[5]

---

[4] In *Rose,* the Ninth Circuit Court of Appeals accepted the District Court's finding that the evidence regarding Petitioner's paternity was in perfect equipoise because "no particular paternity scenario is more likely than any other." 679 F. App'x at 559. The Ninth Circuit reasoned that the petitioner therefore met the burden of producing at least substantial credible evidence sufficient to burst the presumption of alienage levied by his foreign birth. *Id.*

[5] Because the parties agree that Jesus Tiznado met the other requirements for citizenship

61.     The Court concludes that Petitioner has not met his burden of producing substantial, credible evidence sufficient to burst the presumption of alienage established by the government. Although Petitioner has offered evidence that Jesus Tiznado resided in the United States periodically throughout his lifetime and, at times, claimed to have been born in the United States, read as a whole, critical evidence is lacking in foundation, other evidence is conflicting and there are crucial chronological gaps. Accordingly, the Court concludes that Petitioner has not overcome the presumption of alienage.

62.     Petitioner's claim that his father was born in Topawa is based on a series of government-issued documents and on testimonial and circumstantial evidence from his family. The government documents were all issued at a point in time after Jesus Tiznado obtained two baptismal certificates from the San Solano Mission in Topawa, Arizona listing Topawa as his birthplace. As discussed below, these certificates of baptism do not credibly establish that Jesus Tiznado was born in Topawa because his place of birth is not recorded in the Mission's baptismal register. Because the baptismal certificates are not credible, the remainder of the documents that were issued in reliance on the certificates, including Jesus Tiznado's delayed birth certificate, his death certificate, and his U.S. citizenship card, also cannot stand as substantial evidence proving his U.S. birth. Furthermore, the remainder of Petitioner's evidence contains internal inconsistencies as to the place of Jesus Tiznado's birth and contains information gaps at crucial time periods. Therefore, the Court finds that Petitioner has not presented a substantial, credible claim that Jesus Tiznado was born in the United States.

**A. The Baptismal Register Does Not Support a Finding of Jesus Tiznado's U.S. Birth**

63.     The baptismal register for the San Solano Mission does not credibly support a finding that Jesus Tiznado was born in Topawa, Arizona. Jesus Tiznado's completed entry includes his name, the date and place of his baptism, his date of birth,

---

under relevant U.S. code at the time of Petitioner's birth, the question of whether or not Petitioner may claim derived citizenship through his father turns solely on the issue of whether or not Jesus Tiznado was born in the United States. 8 U.S.C. §§ 1401 (a)(7), 1409(a).

the name of the priest baptizing him, and two witnesses. Although there is no designated space to enter the place of baptism, Chancellor Rhinehart's testimony credibly established that the handwritten notation, "Topawa," above the date of baptism records the place of baptism. Further, Chancellor Rhinehart's testimony as to why the register would not have included a designated space for the place of baptism to be entered—that the canon law had recently changed to require inclusion of that information and the Mission was using up its old registers—credibly explains why "Topawa" was handwritten into the register above the date of baptism. Read in this way, the information entered into the register complies exactly with the canon law in effect at the time.

64. Jesus Tiznado's baptismal register entry also includes a notation for his residence at the time of baptism, an entry not called for by canon law. Chancellor Rhinehart's credibly testified that the San Solano Mission included this information as a way of tracking which church among the many in the parish hosted an individual's baptism. The register indicates that Jesus Tiznado's residence at the time of baptism was San Francisquito, Mexico.

65. The baptismal register does not contain a space for the priest to enter the place of birth, and no entry in the register can plausibly be interpreted as Jesus Tiznado's birthplace.

66. A church official subsequently examining the baptismal register would not be able to discern from the register where Jesus Tiznado was born.

67. Brother David Paz's single-sentence statement, recorded in a 1984 INS memo, that the baptismal register would not record the town of birth if the birth occurred near the baptismal site is not substantial credible evidence. First, there is no foundation for Brother Paz's statement. The record does not demonstrate Brother Paz's awareness of Catholic recording practices or the recording practices at the San Solano Mission in 1922, over sixty years earlier. Second, Brother Paz's contention would be in violation of canonical law in effect at the time, which did not call for any record of the place of birth. Third, the baptismal register does not include any space to indicate the place of birth,

1  which contradicts Brother Paz's statement that a birthplace would be absent only if the
2  infant were born at or near the baptismal location.[6] Fourth, Jesus Tiznado was baptized
3  nearly two years after his birth, weakening the connection between his birthplace and his
4  place of baptism. The Court cannot infer a U.S. birth based merely on an absence of a
5  birthplace notation in a register that does not call for such information.[7]  In short, the
6  baptismal register does not support any finding as to Jesus Tiznado's specific place of
7  birth, and the Court cannot infer that he was born in the United States based on the
8  register.

**B. Jesus Tiznado's Two Certificates of Baptism Lack Foundation to Stand as Credible Evidence of U.S. Birth**

68.   Jesus Tiznado's certificates of baptism also do not support a finding that Jesus Tiznado was born in Topawa. According to Tucson Diocese practice, baptismal certificates should include only information found in the baptismal church's register; no other source should form the basis for a certificate of baptism. Chancellor Rhinehart's testimony that canon law controlled the baptismal registers and that baptismal certificates should not include any information not found in the baptismal register casts significant doubt as to the accuracy of the birthplace information on Jesus Tiznado's baptismal certificates. Petitioner offers no other evidence to legitimize the inclusion of Jesus Tiznado's place of birth on the two certificates. Without evidence explaining the source

---

[6] Even if the Court were to find Brother Paz's claim credible, his statement could also support a finding that Jesus Tiznado was born in Mexico because a distance under 20 miles might be considered "near the place of baptism."

[7] Chancellor Rhinehart testified that individual parish practices for recording baptism may be somewhat inconsistent despite canonical law. (Test. Rhinehart, Ex. 92 at 16, 25-26; Dep. Rhinehart, Ex. 54 at 10.) *Gastelum Chavez v. Lynch,* 2016 WL 4402795 (C.D. Cal., Aug. 16, 2016), illustrates this inconsistency.  There the court concluded that the Petitioner had produced credible evidence of a likely U.S. birth based on a baptismal register and certificates based on a church administrator's testimony that it was the practice of that church to capture both the place of birth and the place of baptism in the church's baptismal register. The baptismal record for the infant in question was consistent with that testimony, containing two additional lines which read: "de El Paso Tex" and "S. El Paso 713." *Id.* at 3. According to the church administrator who had been trained in how to enter information into the register, that meant that the child whose baptism was being recorded was both born and baptized in El Paso in 1929. *Id.* Similar evidence does not exist with respect to the San Solano register.  Moreover, unlike the present case, the infant whose birth was at issue in *Gastelum Chavez* had been baptized within four months of her birth. *Id.*

- 13 -

of the birthplace information on the baptismal certificates, and given competing testimony from Chancellor Rhinehart that the information on the certificates should have come only from the baptismal register, the certificate entries identifying Topawa as Jesus Tiznado's place of birth have no credible foundation. Therefore, the Court finds that these certificates do not lend credibility to the claim that Jesus Tiznado was born in Topawa.

**C. The Remainder of the Evidence is Inconsistent and Lacks a Credible Foundation**

69.     Because the baptismal certificates do not credibly establish Jesus Tiznado's U.S. birth, and because the remainder of the evidence pertaining to Jesus Tiznado's birthplace is inconsistent and contradictory, the Court concludes that the other government-issued documents relying on the baptismal certificates—a 1979 delayed birth certificate, a 1980 U.S. Citizen Identification Card, and a 2000 death certificate—likewise lack a credible foundation to show Jesus Tiznado was born in Topawa.

70.     Nothing in the record suggests that Jesus Tiznado's delayed birth certificate relies on sources other than the baptismal certificates for identifying Topawa as his place of birth. Although under Arizona law birth and death certificates are "prima facie evidence of the facts therein stated," A.R.S. § 12-2264, they are not conclusive; they "simply denote[] that the evidence may suffice as proof of a fact until or unless contradicted and overcome by other evidence." *Mah Toi v. Brownell*, 219 F.2d 642 (9th Cir. 1955). The baptismal register contradicts the baptismal certificates, which undermines the Arizona delayed birth certificate. Jesus Tiznado's Gilbert, Arizona school record is the only other document in the record supporting the delayed birth certificate, and that document cuts against a finding of U.S. birth because it identifies his nationality as Mexican.[8] Therefore, the government has sufficiently contradicted the evidence

---

[8] Both parties' Proposed Findings of Fact and Conclusions of Law refer to a 1977 affidavit by Francisco Moreno attesting to Jesus Tiznado's Topawa birth. (Doc. 90 at 2, Doc. 91 at 11.) Both parties also note that Jesus Tiznado's Delayed Birth Certificate refers to the birth certificate of Petitioner's sister, Adelaida Tiznado Reina, stating that Jesus Tiznado was born in Topawa. (Doc. 90 at 2, Doc. 91 at 10.) However, Adelaida's birth certificate has not been offered

- 14 -

1  underlying Jesus Tiznado's delayed birth certificate; it cannot stand as credible evidence of his U.S. birth.

72. Jesus Tiznado's death certificate also cannot stand as credible evidence of his U.S. birth. By undermining the credibility of the delayed birth certificate, as discussed above, the government has contradicted the credibility of all of the government-issued documents that rely on the delayed birth certificate, including Jesus Tiznado's death certificate.

72. Likewise, because the delayed birth certificate is not credible, the remainder of Petitioner's documentary evidence, including Jesus Tiznado's U.S. Citizen identification card, is also insubstantial evidence of Jesus Tiznado's birthplace. All of the government documents issued after the 1979 delayed birth certificate apparently relied on that delayed birth certificate as their foundation for identifying Topawa as the place of birth. The credibility of all three of these government-issued documents is also undermined by other government-issued documents in evidence. Specifically, Esther Lidia and Arcadia's birth certificates claim Jesus Tiznado was born in Mexico and was of Mexican nationality. It is of no help that Esther Lidia has two birth certificates with contradictory information, one identifying El Plomo, Mexico and one identifying "Topagwa as in the certificate" as her father's place of birth. If anything, this inconsistency undermines the credibility of all three of the birth certificates as bases for claiming Jesus Tiznado was born in Topawa.

73. Further, even if the Court were persuaded by the former testimony of the five witnesses who testified in 2008 that Jesus Tiznado always claimed to have been born in the United States, other documents in the stipulated record undermine the credibility and the consistency of that claim. For example, Petitioner offers the transcripts of testimony given by his mother, Julia Reyna, and his sisters, Arcadia Espinoza and Esther Lidia Maldonado, all claiming that Jesus Tiznado had always said he was born in

---

as part of the Stipulated Record and as such it cannot be weighed for or against the credibility of the Delayed Birth Certificate. Moreover, other evidence contradicts the claim that Adelaida's birth certificate identifies her father U.S.-born.

- 15 -

1    Topawa, Arizona. However, as discussed above, the record also includes birth certificates
2    for Esther Lidia Maldonado (1969) and Arcadia Espinoza (1970), issued by Sonora,
3    Mexico and signed by their mother, Julia Reyna, listing Jesus Tiznado as a Mexican
4    native of Mexican nationality. The testimony of these witnesses is therefore contradicted
5    by their own government documentation. Because Petitioner called no witnesses during
6    the bench trial, the Court is unable to weigh the credibility of this testimony beyond
7    considering its consistency as part of the larger record. The testimony lacks credibility
8    primarily because it is inconsistent with other evidence offered by both parties.

9          74.    Petitioner's circumstantial evidence that his father resided periodically in
10   the United States does not make a substantial argument that Jesus Tiznado was born in
11   the United States. Similarly, the showing that three of Jesus Tiznado's older and younger
12   siblings were born in the United States before and after his birth does not build a
13   substantial, credible argument that Jesus Tiznado was, by extension, also born in the
14   United States. Seven years passed between the 1915 birth of Jesus Tiznado's older
15   siblings and Jesus Tiznado's birth in 1922; another five years passed between Jesus
16   Tiznado's birth and his younger sister's 1927 birth. In the middle of this time span, in
17   1924, the baptismal register at San Solano records Jesus Tiznado and his family as living
18   in Sonora, Mexico. The fact that Jesus Tiznado lived in Mexico at the time of his baptism
19   in 1924 negates the inference that Jesus Tiznado's family lived continuously in the
20   United States for the entire 12-year span between his older and younger siblings' U.S.
21   births. Furthermore, the stipulated record indicates that the Tiznado family moved
22   between cities frequently, including residing in Ajo (1915), San Francisquito, Mexico
23   (1924), Chandler (1926), Goodyear (1927), and Gilbert (1928). This mobility weakens
24   the support for a claim that Jesus Tiznado's 1924 baptism in Topawa implies that the
25   family lived in Topawa two years earlier, in 1922.

26         75.    Similarly, Petitioner's circumstantial evidence that his cousin, Humberto
27   Carillo Tiznado, successfully acquired citizenship through Jesus Tiznado's older brother
28   Miguel does not lend credibility to Jesus Tiznado's claim to U.S. birth. Miguel was born

in 1915; Jesus was born in 1922. As discussed above, there is consistent evidence that for some time between Miguel's birth and Jesus Tiznado's baptism, at the least in 1924, that Jesus Tiznado and his family lived in Sonora, Mexico. In these circumstances, the fact that Jesus Tiznado's older brother Miguel was able to establish his U.S. birth does not make Jesus Tiznado's own claim to U.S. birth more credible.[9]

76. Additionally, Petitioner's paternal grandfather's obituary can, at most, establish that Jesus Tiznado and his family were living in Chandler, Arizona in 1926. It does not support an inference that Jesus Tiznado was therefore born in Topawa in 1922, four years earlier, particularly given the family's residence in Sonora, Mexico in 1924.

77. Finally, Petitioner's 2008 acquittal on charges of illegal re-entry does not assist Petitioner with his burden of proof here even though the trial turned on the issue of where Jesus Tiznado was born. In the 2008 trial, the government had to prove, beyond a reasonable doubt, that Petitioner was not a citizen of the United States and that Jesus Tiznado was not born in Topawa. The burden is different in this case, where the Petitioner must show substantial and credible evidence that Jesus Tiznado was born in the United States.

78. Read in a light most favorable to the Petitioner, Petitioner's evidence establishes that Jesus Tiznado resided periodically in Arizona and that members of his family also lived in Arizona. The evidence does not, however, establish a substantial or credible claim that Jesus Tiznado was born in Arizona, as the record contains no evidence that he was present in Arizona prior to his baptism in 1924.

### III. CONCLUSION

Based on the foregoing, the Court finds that Petitioner, Esteban Tiznado-Reyna, has not produced substantial, credible evidence to support a finding that his father, Jesus

---

[9] Miguel's USCIS documentation indicates that Miguel lived continuously in the United States from 1915 until approximately 1928. As discussed above, this claim is contradicted by evidence that Jesus Tiznado and his family lived in Mexico in 1924. (PPFAC at 3-4.) This inconsistency further detracts from the credibility of Petitioner's claim that because his paternal uncle lived continuously in the United States, his father was also probably born in the United States.

Tiznado, was born in the United States. Petitioner has not met his burden and has not rebutted the presumption of his alienage.

The Ninth Circuit Court of Appeals stayed its proceedings and transferred this matter to this Court for the limited purpose of reviewing Petitioner's citizenship claim. (Doc. 10.) Upon these Findings and Conclusions,

**IT IS HEREBY ORDERED** that the Clerk shall send electronic notice of this Order to the United States Court of Appeals for the Ninth Circuit for such further proceedings as it deems appropriate. The Clerk shall also serve this order on counsel for both parties.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to close this matter.

Dated this 13th day of October, 2017.

_____
Honorable Jennifer G. Zipps
United States District Judge